UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| O.R.F.,<br><br>Petitioner,<br><br>- against -<br><br>KENNETH GENALO, Field Officer Director of New York, Immigration and Customs Enforcement, *et al.*,<br><br>Respondents. | **<u>MEMORANDUM DECISION AND ORDER</u>**<br><br>26-cv-4883 (BMC) |

**COGAN**, District Judge.

Petitioner O.R.F., a national of the Dominican Republic, seeks a writ of habeas corpus under 22 U.S.C. § 2241. Petitioner seeks immediate release from U.S. Immigration and Customs Enforcement ("ICE") detention or, in the alternative, a bond hearing, at which respondents must justify his ongoing detention by clear and convincing evidence. For the following reasons, the petition is granted to the extent set forth below.

## BACKGROUND

Petitioner entered the United States in December 2022 at or near Eagle Pass, Texas without inspection. On the same day, United States Border Patrol officers encountered petitioner and detained him. Petitioner sought asylum from the Dominican Republic because he had received death threats from a criminal group. He was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A).

In February 2023, petitioner reported to an ICE Field Office in Massachusetts, whereupon he was served with a Notice to Appear ("NTA"). The NTA states that petitioner is inadmissible under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(1) of the Immigration and

Nationality Act. See 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). The NTA was filed with the Executive Office of Immigration Review (EOIR), thereby commencing petitioner's removal proceedings. ICE does not have a record of petitioner's humanitarian parole extending beyond February 2023. Rather, petitioner was issued an Order of Release on Recognizance ("OREC") at that time.

Since then, Petitioner's removal proceedings have progressed. He applied for asylum and attended his master calendar hearing in 2025, and an individual merits hearing is scheduled for July 2027.

On June 29, 2026, petitioner was driving on a highway in the Bronx when he was pulled over by ICE officers and questioned.[1] ICE was conducting a "targeted enforcement action" in the area and searching for another individual. The officers ran petitioner's license plates and determined that petitioner (1) did not have documents allowing him to remain in the United States; (2) had failed to update ICE of his change of address; and (3) had been arrested by the NYPD, though the charges were subsequently dismissed.

In response to this Court's order to show cause why petitioner's habeas petition should not be granted, respondents provided no documentation from the arrest and no declaration from any ICE officers that were present or involved on the day of the arrest. Respondents submitted a declaration from Deportation Officer Leonel Paulino, whose declaration states that Supervisory Detention and Deportation Officer ("SDDO") Brenden Cesar Cuni remotely obtained a Form I-200 warrant after finding probable cause that petitioner was removable. Officer Paulino's

[1] Petitioner lives in Boston, but his partner and two-year-old daughter live in New York. He was visiting them at the time of his arrest.

declaration states that petitioner's arrest was made pursuant to the "previously issued" Form I-200.

Following his arrest, petitioner was transported to 26 Federal Plaza for processing. According to Officer Paulino, SDDO Cuni conducted a custody determination and determined that petitioner posed a flight risk because he illegally entered the United States; failed to alert DHS of his change of address from Massachusetts to New York; has no legal ties to the community; and failed to register as required by the Alien Registration Act. Petitioner disputes the latter three findings because (1) he did not move from Massachusetts to New York (he was merely visiting); (2) he has family in the United States, including his partner, daughter, and a second child due any day now; and (3) the I-94 issued to him when he was paroled in 2022 and his Notice to Appear "constitute evidence of registration." 8 C.F.R. § 264.1(b).

Petitioner was served with the Form I-200 and a Notice of Custody Determination later that day. Petitioner was informed of his right to request a review of the custody determination by an immigration judge, and petitioner indicated that he wished to request such a review.

On the same day, Assistant Field Office Director Melvin Marcellin issued a memorandum canceling petitioner's OREC. The memorandum was created because petitioner's Form I-220A (*i.e.*, OREC) was not immediately available to complete the cancellation portion of the Form I-220A. In other words, the memorandum was intended to replace the cancellation portion of petitioner's Form I-220A.

Two days after his arrest, petitioner was transferred from 26 Federal Plaza to the Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he remains today.

## LEGAL STANDARD

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Ozturk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

## DISCUSSION

As a threshold matter, the statute governing petitioner's detention is 8 U.S.C. § 1226.[2] Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." "Under Section 1226(a), detention is discretionary, and 'the Attorney General … may release the alien on bond … or conditional parole.'" Barbosa da Cunha, 175 F.4th at 72. "Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection or admission." Id. at 73.

Petitioner therefore challenges his discretionary detention under Section 1226 and the process that landed him in detention. "Parties claiming denial of due process in immigration

[2] Respondents "respectfully preserve their arguments that 8 U.S.C. § 1225(b)(2)(A) is the applicable detention authority here," but concede that Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026), "likely counsels treating Petitioner as subject to 8 U.S.C. § 1226(a)." The Court agrees that da Cunha controls here, and petitioner is subject to discretionary detention under Section 1226, not mandatory detention under Section 1225. See Barbosa da Cunha, 175 F.4th at 73-78.

cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (quoting Lattab v. Ashcroft, 384 F.3d 8, 19 (1st Cir. 2004)). Here, the "challenged process" is petitioner's arrest by immigration officers pursuant to an administrative warrant.

Form I-200 warrants are administrative warrants that authorize immigration officials to effectuate certain arrests; such warrants are to be used "only under carefully proscribed circumstances." Garcia Lanza v. Noem, 822 F. Supp. 3d 326, 332 (E.D.N.Y. 2026). Form I-200 "allows arresting officers to issue their own warrants – a rare exception to the traditional practices in American law." Id. at 332-33. Administrative warrants issued "post-arrest" are "plainly invalid." Id. at 333; see also Zhu v. Genalo, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025) ("The Government has significant discretion to enforce the immigration laws, and, indeed, to revoke [parole, but] it must do so consistent with the requirements of its own regulations and the Due Process Clause.").

Here, there are no documents or facts in the current record that establish when the Form I-200 was issued,[3] and "[t]he *only* factual evidence submitted by respondents in this case consists of a single declaration of [an ICE officer] who had no [personal] knowledge of the facts." Garcia Lanza, 822 F. Supp. 3d at 338. As this Court has previously explained, ICE cannot arrest first and justify the arrest with a Form I-200 warrant second. Chaglla v. Maldonado, No. 26-cv-4308, 2026 WL 2529494, at *2 (E.D.N.Y. Aug. 27, 2026); see also Garcia Lanza, 822 F. Supp. 3d at 332-34 (collecting cases). In other words, "the issue here is not the permissibility of immigration

[3] This Court has considered previous declarations from SDDO Cuni that were offered in support of a noncitizen's arrest pursuant to a Form I-200. At least one of those declarations was contradicted by the factual record and required SDDO Cuni to submit a supplemental declaration, in which he admitted that he did not issue the I-200 warrant until after the arrest. Chaglla, 2026 WL 2529494, at *1.

detention, but rather the process required in connection with such detention." Valdez v. Joyce, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025).

Additionally, when petitioner was released on recognizance in February 2023, he was released on conditional parole. See Tumba v. Francis, 813 F. Supp. 3d 394, 402 (S.D.N.Y. 2025) ("The Government 'use[s] the phrase "release on recognizance" as another name for "conditional parole" under § 1226(a).'") (quoting Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007)). The Government could have issued a warrant for his arrest, but they instead chose to release him. Of course, that release was conditional on petitioner cooperating in his removal proceedings and abiding by other requirements. "[T]he Government retains significant discretion in revoking conditional parole – it may do so 'at any time.'" Tumba, 813 F. Supp. 3d at 404 (quoting 8 U.S.C. § 1226(b)). "But Due Process still requires that such discretion actually be exercised – i.e., that some determination actually be made." Id.

In other words, before respondents could revoke petitioner's conditional parole and arrest him, they needed to determine that he was a flight risk or danger to the community. Id (citing Valdez, 803 F. Supp. at 217). Here, Officer Paulino's declaration establishes that no determination regarding whether petitioner posed a flight risk was made until *after* petitioner was arrested. On the current record, the Court is convinced that petitioner "was 'entitled to more process than he received' pursuant to § 1226(a) and its implementing regulations." Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025) (quoting Valdez, 803 F. Supp. 3d at 219).

Respondents argue that this case is indistinguishable from Orozco v. Genalo, No. 26-cv-4262 (E.D.N.Y.) and Perez Vasquez v. Maldonado, No. 26-cv-3494 (E.D.N.Y.). In both cases, the Court ordered the respondents to provide the petitioner with a bond hearing under 8 U.S.C.

§ 1226(a) but did not require a burden-shifted bond hearing because the petitioners had been detained for less than six months. See Zadvydas v. Davis, 533 U.S. 678, 701 (2001) (establishing six-month, presumptively reasonable duration of detention). But here, although petitioner's detention is lawful under Section 1226(a) and he has been detained for less than six months, the record leaves significant doubt in the Court's mind about the due process petitioner was afforded during the arrest that led to his current detention.

Thus, for the reasons set forth in Chaglla, the proper remedy is a burden-shifted bond hearing. See Chaglla, 2026 WL 2529494, at *3-4 (explaining that "rewinding the clock" by ordering immediate release from detention poses intractable issues, but "fast-forwarding it, by requiring respondents to justify petitioner's detention by clear and convincing evidence," can vindicate petitioner's due process rights). "Accordingly, petitioner is entitled to a 'burden-shifted bond hearing ... at which the Government bears the burden of showing, by clear and convincing evidence, that he is either a danger to the community or a flight risk.'" Gyaltsen v. Maldonado, No. 26-cv-3314, 2026 WL 2137872, at *4 (E.D.N.Y. July 24, 2026) (citations omitted); see Velasco Lopez v. Decker, 978 F.3d 842, 855-57 (2d Cir. 2020).

**CONCLUSION**

The petition is granted to the extent set forth above.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
September 29, 2026